*727 OPINION.
Sternhagen:
Clarence Wliybrow was an artist. His work was done on inspiration and his product was beauty. He concerned himself with color, line, balance, harmony, and proportion. Hig task was to catch the grandeur of the Louis’, the grace of the brothers Adam, or the charm of the classic Florentine, and install it behind a high brownstone stoop on Madison Avenue in place of its Victorian glass and gold. He thought not of quantity or of production or of unit costs. Success to him was in quality and effect. He bought paint, of course, and other materials for his art — so did Leonardo and Rembrandt — and sold the product, as did Chippendale and Whistler.
Then came the war and the burdens of government, and his place must be found in the profits tax of 1917. He knew little of such matters then, and hardly more when he testified seven years later. Accounts irked him. He was successful enough to have a bookkeeper and this man made the tax return which Whybrow signed. What it contained he hardly knew. It was based upon the assumption that his business was one “ having no invested capital or not more than a nominal capital,” as provided in section 209. But the Commissioner found in his return that he had business assets and liabilities — he had a studio containing models and a library of many fine books and pictures, he had accounts receivable and payable, and he had cash in the bank — and he was therefore regarded as conducting a trade or business having capital to be used as the basis for measuring war profits.
In this we must disagree. This man’s business was in his soul. He could have carried it on anywhere and without a cent. The only investment he had ivas in the library, and it is questionable whether this is to be regarded more as a business asset or as a personal collection. To be sure, he used it in his work, but only to supplement his ideas. Whether it was productive or what it produced no one can say. It may be doubted whether he would have paid it in for stock or shares if he had incorporated. Are a lawyer’s books, a doctor’s surgery, an architect’s sketches and snapshots, or an engineer’s tables and formulae his capital ? It was apparently not so regarded by the sponsors of section 209 in Congress, for both Senator Simmons and Representative Kitchin said that the section was expressly designed to provide for lawyers, doctors, engineers, and their like. And the courts have applied the section even more freely than this by including commission merchants, Porter v. Lederer, 267 Fed. 739; selling agents who purchased for themselves and resold, Cartier v. Doyle, 277 Fed. 150; R. H. Martin, Inc. v. Edwards, 293 Fed. 258; licensors of patents, DeLaski & Thropp Co. v. Iredell, 268 Fed. 377; and a mining corporation whose organizer borrowed the money for its original capital, Empire Fuel Co. v. Hays, 295 Fed. 704; while excluding corporations which sold stock for cash, Alworth-Stephens Co. v. Lynch. 278 Fed. 959; and issued stock for a secret process and *728 machinery. Lincoln Chemical Co. v. Edwards, 272 Fed. 142; 289 Fed. 458.
That the section is difficult to construe and apply can not be doubted. Clearly, since the qualifications are in the disjunctive, the taxpayer must prove either that he has no invested capital in the statutory sense or that he has only a nominal capital in the non-statutory sense. We think this taxpayer has no invested capital within the intendment of the statute. The cash he had was almost all advances from his patrons, held by him, as he said, “in trust” till the completion of their contracts. He used neither capital nor credit, but paid his obligations out of and after his receipts. His samples were loaned to him without security. His only permanent asset was his library, and this we can not regard as capital. The amount of his gross income including, as it apparently does, amounts advanced by patrons, is not significant.
Section 209 should be applied.